# 7245

JNO. P. SULLIVAN

    VS                                 NO. 7245.

GEO. W. SPRINGER

CHARLES F. CLAIBORNE, JUDGE

February 25 1918.

CHARLES F. CLAIBORNE, JUDGE.

This is a contest over the proceeds of a Sheriff's
Sale between two *successive* lessors, one claiming priority by virtue of
the law and the other by virtue of an agreement. The case turns
upon the interpretation of the agreement.

The facts are as follows:

In August 1914 the Gauche Realty Co., as owner,
leased to the plaintiff herein, John P. Sullivan, the ground
floor of the property No. 130 Royal Street for a term of 24
months expiring September 30th. 1916 for the price of $250.00 a
month.

On the same day, Sullivan subleased the same prop-
erty to the defendant herein, Geo. W. Springer, for the same term
and for the same price.

Springer defaulted in the payment of his rent for
the months of June, July, and August 1916, and under the terms of
*his* lease the rent for the month of September became exigible.

In the first days of September, Sullivan notified
the Gauche Co., that he would not renew the lease and that he
intended to sue Springer for the rent he owed him and seize the
contents of the premises. But Springer desired to continue as
lessee of said premises.

The Gauche Company; however, was unwilling to lease
to him as long as he had not paid his rent and as long as it
was in the power of Sullivan to seize him. Thereupon the follow-
ing agreements were made:

Sullivan drew up a petition in which he alleged
the indebtness of Springer to him and prayed for judgment against
him for $1000.00. On September 22nd. 1916 Springer confessed
judgment as prayed for; but neither the petition nor the con-

25

fession of judgment were filed in Court at that time.

Upon the same day Sullivan addressed the following letter to Springer:

"New Orleans, September 22nd. 1916.

George W. Springer, Esq.,
City.

Dear Sir:-

In consideration of your granting the confession of judgment hereto attached for $1000.00 balance due on rent of premises No. 130 Royal Street, I hereby agree not to file said suit or execute said judgment for one year from date, provided you will pay $90.90 on the first of each month for eleven months said payments to begin on November 1st. 1916.

"It is understood that if you fail to make payment on the first of any month, I will at once file the suit and execute the judgment for any balance that may be due on this rent claim.

Yours truly,
John P. Sullivan."

On the same day the Gauche Co., wrote the following letter to Sullivan:

'New Orleans, September 22nd. 1916.

John P. Sullivan, Esq.,
City,

Dear Sir:-

"In consideration of the fact that you have granted an extension to our prospective lessee of the premises No. 130 Royal Street, and have not exercised your right as lessor to provisionally seize the contents of said premises for the balance of rent due you by lessee, Springer, namely: $1000.00 we do hereby waive our lessor's lien and privilege on the contents of said premises in your favor up to the amount due you on above rent claim, should it become necessary for you to seize the premises at No. 130 Royal Street and No. 131 Exchange Alley, at any time between October 1st. 1916 and October 1st. 1917.

Yours truly,
Gauche Realty Co."

On April 25th. 1917 the American Brewing Co., filed a suit against Springer and sequestered his City and State licenses for the year 1917.

At that time Springer had paid Sullivan only three months at $90.90, making $272.70, leaving a balance due of $727.30. He was therefore three months in arrears for the payments due on February, March and April 1st. 1917.

Thereupon Sullivan, on May 2nd. 1917, filed his petition and confession of judgment in the Civil District Court, obtained judgment against Springer for $727.30 issued a fieri facias, and seized the contents of the leased premises 130

26

Royal Street, as well as Springer's City and State licenses
for 1917 already sequestered by the Sheriff at the suit of the
American Brewing Company, and advertised the whole for sale.

The Gauche Company intervened to claim a preference
over Sullivan on the proceeds of sale and alleged that it was
the owner of the premises 130 Royal Street; that it had leased
said premises to Springer from October 1st. 1916 to September
30th. 1917, at a rental of $175.00 a month and that it had a
lessor's privilege on all the contents of the leased premises
for the payment of the rent due; that Springer was indebted to
it in the sum of $75.00 balance due for the month of December
1916 and for the whole of the months of January, February, March
and April 1917 making a total of $775.00; that during the month
of September 1916 it had agreed with the said John P. Sullivan
that, should it become necessary for him to seize the premises
130 Royal Street and 131 Exchange Alley to pay an amount of
$1000.00 which was then due the said John P. Sullivan, it would
waive its lessor's lien and privilege on the property then con-
tained in the said premises which might still be contained there-
in at the time the said Sullivan should issue any seizure herein,
up to the extent of the amount that would be due the siad Sullivan
at the time ~~of said Sullivan at the time~~ of said seizure; that
the amount due Sullivan was only $727.00, and that his privilege
in sofar as it was superior to the privilege of the Gauche Com-
pany rested "only upon such of the property now seized as was
a in the premises on September 22nd. 1916, and that upon all
property contained in the said premises your petitioner, (the
Gauche Company) has a lessor's lien and privilege superior to
any claim by the said Sullivan under his confession of judgment
herein"; "that among the property seized by the said Sullivan
are two State and City licenses for the year 1917 amounting to
$705.00; that upon the said two State and City licenses the said
Sullivan has no lien and privilege thereon, or upon the proceeds
thereof, for his rent as aforesaid and it claims the same"; "that
upon all of said property that has been placed there since Sep-
tember 22nd. 1916 your petitioner has a superior lien and

27

privilege, as lessor, ranking that of the said John P. Sullivan plaintiff herein, and it desires to assert the same;" it prayed for a separate appraisement of the property as follows: 1st. All the property that was in the premises on September 22nd. 1916, 2nd. All the property which was placed in said premises since September 22nd. 1916 including the two State and City licenses; and it prayed that its privilege be recognized as superior to that of Sullivan upon the proceeds of sale of the two licenses and of the contents of the premises that were placed therein after September 22nd. 1916.

An order of court was rendered accordingly, but it does not appear by the record that the property seized was appraised in the two classes created by the petition and prayer of the Gauche Company. All that the Sheriff's return indicates is that the contents of the premises were sold for    $ 418.45 and the two licenses for    $ 285.00

Making a total of    $ 703.45

There was judgment ordering the Sheriff to pay to the Gauche Company the proceeds of Sale of the two State and City licenses amounting to $285.00, and to John P. Sullivan all the other proceeds of Sale.

The proceeds of sale of the contents of the premises were not given to the Gauche Company by that judgment probably because it did not prove that they had been put upon the premises after September 22nd. 1916, and that the presumption was that they were there prior to that date.

From this judgment plaintiff, John P. Sullivan, has appealed.

It is suggested in plaintiff's brief that independently of the letter of the Gauche Co., of September 22nd. containing a waiver of their privilege in favor of Sullivan, the latter would have been preferred to the former upon the theory that where there are two consecutive lessors the first lessor enjoys a priority of privilege over the second. We do not find it necessary to pass upon this point.

It is true that all contents of the leased premises up to September 30th. 1916 were impressed with Sullivan's privilege, as lessor. Admitting that they continued thus impressed with a privilege superior to Gauche it cannot avail Sullivan in so far as the licenses are concerned. These were not on the premises during Sullivan's lease which expired on September 30th.1916. They were placed therein only after January 1st.1917, during Gauche's lease. Therefore Sullivan's lease never affected them. But this question of law may assist in interpreting Gauche's letter of September 22nd. by virtue of which Sullivan claims a preference.

By that letter did the Company waive its rights only upon the contents of the premises contained therein on September 22nd.,or upon all such contents as might be therein at the time it would become necessary for Sullivan to seize?

The allegations of the petition of intervention of the Gauche Company contains rather an interpretation of that letter as they would have read it, rather than the language itself. We shall adhere to the letter.

Article C.C.1951 (1946) provides: "When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect rather than in a sense which would render it nugatory." C.N.1157.

This is a textual translation of Rule Second of Pothier on Obligations Part 1 Ch. 1 Article VII § 92. Pothier gives as an example: "For instance, if it is said in an act of partition, "It has been agreed between Peter and Paul that Paul could pass over his property"; although these terms "his property" , in a grammatical sense,may mean the property

29

of Paul as well as that of Peter, nevertheless it is not doubtful that they must be understood to mean the property of Peter; otherwise the clause would be without effect, inasmuch as Paul had no ᴍᴀᴋᴋ need to stipulate that he could pass over his own property."

"Is it not reasonable indeed to presume that parties have not intended to insert in their agreement a useless clause." 25 Demolombe p.11 $/2$ .See 10 M.575; 3A.364.

If we accept the interpretation of the Gauche Company that they waived their privilege only as to the contents in the premises on September 22nd. we must assume that they inserted "a useless clause", and that they renounced to nothing, because they had no privilege to renounce, inasmuch as the privilege of Sullivan alone affected those contents on that date. If on the contrary we adopt the interpretation of Sullivan that the renunciation of superiority made by Guach applied to such contents as might be in the premises at the time it became necessary for him to issue his seizure, then we give substance and effect to the waiver by making it apply to an existing right of superior privilege which the Gauche Company really had over Sullivan on the two licenses at the time he seized them.

We believe that such was the intention of both the Gauche Company and of Sullivan at the time the letters were exchanged on September; in other words, that the Gauche Company was abandoning some right it had, and that Sullivan was acquiring some he did not have. We cannot believe that Sullivan consented to restrict his privilege only upon the contents on the premises on September 22nd. which were being sold and disposed of daily.

We believe that the sum and substance of the agreement made between Sullivan and the Gauche Company was as follows:

That Sullivan was willing to grant Springer an extension of time for the payment of the $1000.00 he owed him, but he was fearful that, in the meantime, the Gauche Company would acquire rights superior to his; in order to obtain his consent to the extension, the Gauche Company agreed not to claim rights superior to his upon the contents of the premises existing at such time when it should become necessary for him to seize the premises at any time between October 1st. 1916 and October 1st. 1917." According to Gauche's interpretation they would have waived nothing and Sullivan would have acquired nothing. But this agreement of waiver was the promise of the Gauche Realty Company. Articles 1957 (1952) and 1958 (1953) of the Civil Code provide: "In a doubtful case the agreement is interpreted against him who has contracted the obligation. But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."

It was incumbent upon the Gauche Co., to have explained and make clear what it meant by the words "on the contents of said premises", whether present or future contents, and not having done so the law presumes that the explanation would have been to its disadvantage. C.A.204.

C. C. 1901 (1895) "Agreements legally entered into have the effect of laws on those who have formed them. They must be performed with good faith."

C. C. 1903 (1897) "The obligation of contracts extends not only to what is expressly stipulated but also to everything that bylaw, equity, or custom, is considered as incidental to the particular contract, or necessary to carry into effect."

But the Gauche Co., contends that Sullivan bound himself to file suit against Springer at once if he failed to make the payments on the first of any month in accordance with

_31

the last paragraph of his letter to Springer which reads as follows:

"It is understood that if you fail to make payments on the first of any month, I will at once file the suit and execute the judgment for any balance that may be due on this rent claim."

We do not interpret that stipulation to have been in favor of the Gauche Co., or to have imposed upon Sullivan the obligation or duty to file suit against Springer immediately after his default.

The stipulation was for the benefit of Sullivan only and conferred upon him a right, and he might well have indulged Springer, without incurring any liability to the Gauche Co.

The Gauche Co., was not a surety for Springer. Neither has the Gauche Co., proved that it suffered any damage by the indulgence.

It is therefore ordered, adjudged, and decreed that the judgment of the District Court in so far as it is in favor of the Gauche Realty Co., be avoided and reversed; and it is now ordered that there be judgment in favor of John P. Sullivan and against the Gauche Realty Company rejecting and dismissing its petition of intervention at its cost and ordering the Sheriff to pay the net proceeds of the Sale herein to the plaintiff herein, John P. Sullivan.

February 27th. 1918.